UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| HABAŞ SINAI VE TIBBI GAZLAR ISTIHSAL ENDÜSTRISI A.Ş.,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>    *Defendant*. | Court No. 21-00527 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. ("Habaş" or "Plaintiff"), by and through its undersigned attorneys, allege and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. This is an appeal from the final results of the antidumping duty administrative review of *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey* ("HRS from Turkey"). The period of review ("POR") is October 1, 2018 through September 30, 2019.

2. On August 23, 2021, the U.S. Department of Commerce, International Trade Administration, Enforcement and Compliance ("Commerce") published its final results finding that hot rolled steel from Turkey is being or is likely being sold at less than fair value in the United States. *See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018– 2019*, 86 Fed. Reg. 47058 (Dep't Commerce Aug. 23, 2021) ("*Final AD Results*"). Commerce's factual and legal conclusions underlying the *Final AD Results* are set forth in its Issues and Decision Memorandum. Memorandum from J. Maeder to C. March, re: Issues and

Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments: Hot-Rolled Steel Flat Products from the Republic of Turkey (August 17, 2021) ("*Final I&D Memo*") (available at https://enforcement.trade.gov/frn/summary/turkey/2021-18057-1.pdf).

## **JURISDICTION**

3. Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, *as amended* (the "Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii). Plaintiff contests Commerce's *Final AD Results*, specifically as applied to Plaintiff. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## **STANDING**

4. Plaintiff is an interested party to the proceeding under Sections 516A(f)(3) and 771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), respectively. Plaintiff is a foreign manufacturer and exporter of the subject merchandise, and participated actively at all stages of the review by submitting questionnaire responses and administrative briefs.

5. Plaintiff, therefore, has standing to bring this action under 28 U.S.C. § 2631(c).

## **TIMELINESS OF THIS ACTION**

6. This Complaint is being filed within thirty (30) days of the filing of Plaintiff's summons in this action. The summons was timely filed on September 20, 2021 (ECF No. 1), within thirty (30) days of Commerce's publication of the *Final AD Results*. *See* 86 Fed. Reg. at 47058. In accordance with USCIT R. 3(a)(2), 5(e) and 6(a), and pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c), Plaintiff's Complaint is timely.

## STANDARD OF REVIEW

7. This Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" as a whole, or is "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

8. When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

9. When reviewing Commerce's statutory interpretations, the Court applies the two-part framework set forth in the Supreme Court's opinion in *Chevron*. *Union Steel v. United States*, 713 F.3d 1101, 1106–07 (Fed. Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984)). Under *Chevron*, to determine whether an agency's interpretation of the statute is entitled to deference, the Court conducts a two-part test. Under the first prong of this test, where Congress has spoken directly to the question at issue, the Court and the agency must give effect to the unambiguously expressed intent of Congress. *See* 467 U.S. at 842–43. If, however, the statute is vague or silent on an issue, the Court upholds the agency's interpretation provided that the interpretation is reasonable. *See id*. at 843.

10. This Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Colombiana de Exportadores de Flores, v. United States*, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998).

AFDOCS/24616462.4

## STATEMENT OF FACTS

11. On October 1, 2019, Commerce published a notice of opportunity to request an administrative review of the antidumping order on hot-rolled steel flat products from Turkey covering the period of October 1, 2018 through September 30, 2019. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 84 Fed. Reg. 52068 (Dep't Commerce Oct. 1, 2019). On October 28, 2019, Colakoglu Metalurji A.S. and Colakoglu Dis Ticaret A.S. filed a request for an administrative review and on October 31, 2019, Petitioners AK Steel Corporation, ArcelorMittal USA LLC, Nucor Corporation, SSAB Enterprises LLC, Steel Dynamics, Inc. and United States Steel Corporation also filed an administrative review request, including a request for review of Habaş.

12. Commerce subsequently published a notice of initiation of an administrative review of the antidumping order on HRS from Turkey on December 11, 2019. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 67712, 67716 (Dep't Commerce Dec. 11, 2019). Commerce initiated the review pursuant to Section 751(a)(1) of the Act, as amended, 19 U.S.C. § 1675(a)(1), and 19 C.F.R. § 351.213. *See id.* at 67712. Plaintiff was selected as a mandatory respondent in Commerce's review. *See* Memorandum from T. Gilgunn to M. Skinner, re: Respondent Selection Memorandum for Administrative Review of Antidumping Duty Order on Certain Hot-Rolled Steel Flat Products from the Republic of Turkey; 2018-2019 (May 15, 2020).

13. Plaintiff participated in the proceeding through the filing of questionnaire responses and supplemental questionnaire responses, and through the submission of legal arguments. On May 18, 2020, Plaintiff submitted a request for guidance from Commerce with regard to the reporting period for home market ("HM") sales and cost of production ("COP").

AFDOCS/24616462.4

*See* Letter from D.L. Simon to Commerce, re: Hot-Rolled Steel Flat Products From Turkey; Request for Guidance (May 18, 2020).

14. On May 20, 2020, Habaş also filed a request for a stay in the underlying review proceeding in light of the Commerce's Timken notice which stated that one of the mandatory respondents in the original investigation was no longer subject to the antidumping order, and a subsequent and pending resolution of a requested revisit of the injury determination in the original investigation at the U.S. International Trade Commission. *See* Letter from D.L. Simon to Commerce, re: Hot-Rolled Steel Flat Products From Turkey; Request for stay at 1-2 (May 20, 2020), *citing Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision Not in Harmony with the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29399, 29400 (May 15, 2020) and Letter from D.L. Simon on behalf of Ereğli Demir ve Çelik Fabrikalarõ T.A.Ş. to the U.S. International Trade Commission, re: Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Request for Reconsideration (May 18, 2020)*.*

15. On May 15, 2020, Commerce issued a questionnaire to Habaş. *See* Letter from T. Gilgunn to Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. (May 15, 2021). On May 29, 2020, Habaş notified Commerce that it was experiencing difficulties responding to the questionnaire and that it was experiencing hyperinflation. *See* Letter from D. Simon to the Department, re: Notifications (May 29, 2020).

16. Plaintiff submitted a response to Section A of Commerce's AD Questionnaire. *See* Habaş' Section A Questionnaire Response (June 29, 2020. On July 13, 2020, Plaintiff submitted its responses to Sections B and C of the AD Questionnaire. *See* Habaş' Section B-C Questionnaire Response (July 13, 2020). On April 20, 2021, Plaintiff submitted a response to the Section D Questionnaire. *See* Habaş' Section D Questionnaire Response (July 20, 2020). Habaş subsequently filed responses to supplemental questionnaires. *See e.g.*, Habaş Section D Supplemental Questionnaire Response (Dec. 17, 2020); Habaş Sections A-C Supplemental Questionnaire Response (Jan. 7, 2021).

17. On February 24, 2021, the Department issued its preliminary results in which it assigned Habaş a weighted average dumping margin of 21.48 percent. *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2018– 2019*, 86 Fed. Reg. 11227, 11228 (Dep't Commerce Feb. 24, 2021) ("*Preliminary Results*"). Commerce's factual and legal conclusions underlying its *Preliminary Results* are set forth in the Preliminary Results Decision Memorandum. Memorandum from J. Maeder to C. Marsh, re: Decision Memorandum for Preliminary Results of the Antidumping Duty Administrative Review and Preliminary Determination of No Shipments: Certain Hot-Rolled Steel Flat Products From the Republic of Turkey (Feb. 17, 2021) ("*Preliminary Results Memo*"), available at https://enforcement.trade.gov/frn/summary/turkey/2021-03783-1.pdf.

18. In the *Preliminary Results*, Commerce deviated from its practice and relied on the Turkish lira ("TL") value of home market sales, rather than the U.S. Dollar ("USD") value. Commerce stated that it relied on the TL sales values because these were "the only sale values that can be directly tied to the audited financial records. *Id.* at 14.

AFDOCS/24616462.4

19. On March 26, 2021, Habaş submitted a case brief contesting certain issues in Commerce's *Preliminary Results.* Habaş Case Brief (Mar. 26, 2021) ("Case Br."). Habaş argued that (1) Commerce has consistently calculated margins using the USD HM price; (2) the use of TL values for HM sales is particularly distortive in the present review; and (3) Commerce's use of the accounting currency rather than the transaction currency for HM price was unlawful. *See generally id.*

20. Specifically, Habaş challenged Commerce's use of the TL value of HM sales rather than the U.S. dollar. *Id.* at 1. Habaş explained that HM sales were made and confirmed in USD and invoices were issued in TL with a USD exchange rate. *Id.* Therefore, Habaş argued, Commerce should have relied on Habaş' reported transaction currency rather than the accounting currency. *Id.* at 3.

21. On August 23, 2021, the Department published its *Final AD Results*, assigning Habaş a weighted-average dumping margin of 24.32 percent. *See* 86 Fed. Reg. at 47059. The challenged determinations, findings, and conclusions are set out in the accompanying *Final I&D Memo*. In the *Final AD Results*, Commerce continued to use TL-denominated sales price for Habaş' HM sales. *See Final I&D Memo* at 8. Commerce stated that use of the TL-denominated price was appropriate because it "use{s} the sales value that can be reconciled to the company's audited financial statements." *Id.* at 9.

22. The *Final Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law with respect to the matters set forth in the following counts.

## STATEMENT OF CLAIMS

### COUNT I

23. The facts and allegations contained in paragraphs 1 through 22 are restated and incorporated herein by reference.

24. "Transaction currency" is not defined by the statute or Commerce's regulations. Commerce's longstanding practice is to use the currency of a respondent's sale prices based on the currency which controls the ultimate amount a purchaser pays for the sale. Commerce has explained that it will use the USD-denominated HM sale prices, as reported, when and because the USD price controls the ultimate amount paid by its HM customers. Commerce has emphasized two issues: (1) the price for these transactions is fixed in USD at the time of invoicing (i.e., at the date of sale); and (2) this USD price controls the ultimate amount that the purchaser pays for the sale, Commerce has used the USD dollar price in its analysis.

25. However, in this case, Commerce stated that "the currency in which the sales are 'incurred' is not the sole determining factor" and that it uses "the sales value that can be reconciled to the company's audited financial statements." *Id.* at 9. Then, although the USD price controlled the ultimate amount the purchaser paid for the sales, Commerce determined that other factors led it to find that it should not use USD as the transaction currency, but, instead, to rely on TL-denominated sales prices. *Id.* at 9-12.

26. Commerce deviated from its practice and did not apply the proper analysis and selection of accounting currency rather than transaction currency, with respect to Habaş based on nearly identical facts to previous cases and, thus, Commerce's final results are arbitrary and not in accordance with law or based on substantial evidence.

## COUNT II

27.   The facts and allegations contained in paragraphs 1 through 26 are restated and incorporated herein by reference.

28.   Habaş provided the necessary payment documents to demonstrate that prices are quoted and agreed in U.S. dollars and, thus, Commerce should have used USD-denominated prices. Habaş showed in its sales reconciliation in in related parts that sales listings are accurate and complete, when using TL values in its accounting system and its sales currencies as USD.

29.   Commerce's final results which conclude that Habaş has provided information differentiating this case from its prior determinations do not properly account for the information provided on the record by Habaş and, thus, are not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to:

(a)   Hold that Commerce's *Final AD Results* were not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Plaintiff in this Complaint;

(b)   Remand the *Final AD Results* to Commerce for determination consistent with the opinion of this Court; and

(c)   Grant such additional relief as the Court may deem just and proper.

**/s/ Matthew M. Nolan**
Matthew M. Nolan
Nancy A. Noonan
Diana Dimitriuc Quaia
Jessica R. DiPietro
Leah N. Scarpelli
John A Gurtunca

Arent Fox LLP
1717 K Street, N.W.

AFDOCS/24616462.4

                                                 Washington, DC 20006
                                                 Phone: (202) 857-6013

                                                 *Counsel to Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş.*

Dated: October 20, 2021