## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| HABAŞ SINAI VE TIBBI GAZLAR ISTIHSAL ENDÜSTRISI A.Ş., <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant,* <br><br> CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., and SSAB ENTERPRISES LLC, <br><br> *Defendant-Intervenors.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**NON-CONFIDENTIAL VERSION**

Court No. 21-00527

Confidential Business Proprietary Information Deleted from Pages 8, 10, 11.

## REPLY BRIEF OF PLAINTIFF HABAŞ SINAI VE TIBBI GAZLAR ISTIHSAL ENDÜSTRISI A.Ş.
## (FINAL VERSION)

Matthew M. Nolan
Jessica R. DiPietro
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006

August 5, 2022

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| HABAŞ SINAI VE TIBBI GAZLAR ISTIHSAL ENDÜSTRISI A.Ş., | ) ) ) |
|  | ) **<u>NON-CONFIDENTIAL</u>** |
| *Plaintiff,* | ) **<u>VERSION</u>** |
|  | ) |
| v. | ) |
|  | ) Court No. 21-00527 |
| THE UNITED STATES, | ) |
|  | ) Confidential Business |
| *Defendant,* | ) Proprietary Information |
|  | ) Deleted from Pages 8, 10, 11. |
| CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., and SSAB ENTERPRISES LLC, | ) ) ) |
|  | ) |
| *Defendant-Intervenors.* | ) |
|  | ) |

## REPLY BRIEF OF PLAINTIFF HABAŞ SINAI VE TIBBI GAZLAR ISTIHSAL ENDÜSTRISI A.Ş.

Matthew M. Nolan
Jessica R. DiPietro
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006

July 18, 2022

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF THE ARGUMENT ................................................. 2

    A.  Whether Commerce applied the proper currency to
        calculate Habaş's Home Market Sales Prices ....................... 2

II.  ARGUMENT ......................................................................... 4

    A.  Commerce's Use of the TL Value of Habaş's Home
        Market Sales Is Not Supported By Substantial
        Evidence and is Not In Accordance With Law ...................... 4

        1.  Substantial Evidence Supports Relying the USD-
            Denominated Price Reported for Home Market
            Sales .................................................................. 5

        2.  Commerce's *Final AD Results* Are Inconsistent
            With Its Prior Decisions ........................................ 12

III.  CONCLUSION .................................................................... 17

AFDOCS/26094526.1

# TABLE OF AUTHORITIES

**Page(s)**

**Administrative Determinations**

*Certain Cold-Rolled Carbon Steel Flat Products From Turkey*,
67 Fed. Reg. 62126 (Dep't Commerce Oct. 3, 2002) (final
LTFV determ.), and accompanying Issues and Decision
Memorandum........................................... ...................... 13, 14-15, 16

*Certain Hot-Rolled Steel Flat Products From the Republic of
Turkey*, 84 Fed. Reg. 30694 (Dep't Commerce June 27, 2019)
(final AD determ. & final no shipments results; 2016-2017),
and accompanying Issues and Decision Memorandum ............. *passim*

*Certain Hot-Rolled Steel Flat Products From Republic of Turkey,*
84 Fed. Reg. 68878 (Dep't Commerce Dec. 17, 2019) (prelim.
AD results & determ. of no shipments; 2017-2018), and
accompanying Preliminary Decision Memorandum ...................... 6, 7

*Certain Hot-Rolled Steel Flat Products From the Republic of
Turkey*, 85 Fed. Reg. 63098 (Dep't of Commerce Oct. 6, 2020)
(final AD results & determ. no shipments; 2017-2018) ...................... 6

*Certain Hot-Rolled Steel Flat Products From the Republic of
Turkey*, 86 Fed. Reg. 47058 (Dep't Commerce Aug. 23, 2021)
final AD results & determ. of no shipments*; 2018–2019), and
accompanying Issues and Decision Memorandum .................. 2, 10, 13

AFDOCS/26094526.1

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE M. MILLER BAKER, JUDGE**

| | |
|---|---|
| HABAŞ SINAI VE TIBBI GAZLAR ISTIHSAL ENDÜSTRISI A.Ş., | ) ) ) |
| *Plaintiff,* | ) **NON-CONFIDENTIAL** ) **VERSION** ) |
| v. | ) ) |
| THE UNITED STATES, | ) Court No. 21-00527 ) |
| *Defendant,* | ) Confidential Business ) Proprietary Information ) Deleted from Pages 8, 10, 11. |
| CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., and SSAB ENTERPRISES LLC, | ) ) ) ) |
| *Defendant-Intervenors.* | ) ) ) |

**REPLY BRIEF OF PLAINTIFF HABAŞ SINAI VE TIBBI**
**GAZLAR ISTIHSAL ENDÜSTRISI A.Ş.**

On behalf of Plaintiff Habaş Sinai ve Tibbi Gazlar Istihsal

Endüstrisi A.Ş. ("Habaş" or "Plaintiff") we respectfully submit this reply

brief in response to Defendant United States' Response to Plaintiff's

Motion for Judgment on the Agency Record dated May 23, 2022

(amended, March 4, 2022), ECF No. 38 ("Def. Resp. Br."), and

Defendant-Intervenors' Response in Opposition to Plaintiff's Motion for

AFDOCS/26094526.1

Judgement on the Agency Record dated June 14, 2022, ECF No. 39 ("D-I Resp. Br.").

For the reasons set forth in Plaintiff's Motion For Judgment On The Agency Record filed on March 18, 2022, ECF No. 33, and as set forth below, certain issues decided by the U.S. Department of Commerce ("Commerce") in the final results of the administrative review covering the 2018-2019 period of review of the subject merchandise are not supported by substantial evidence or otherwise in accordance with law. *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*, 86 Fed. Reg. 47058 (Dep't Commerce Aug. 23, 2021) (final AD results & determ. of no shipments; 2018-2019) (*"Final AD Results"*), PR 115, ECF No. 25-4, Appx1078-1080, and accompanying Issues and Decision Memorandum (*"Final Results IDM"*), PR 112, ECF No. 25-3, Appx1061-1073.

## I.    SUMMARY OF THE ARGUMENT

### A.    Whether Commerce applied the proper currency to calculate Habaş's Home Market Sales Prices

Commerce's determination to rely on the Turkish Lira ("TL") value of Habaş's home market (or "HM") sales, rather than the reported U.S. Dollar ("USD") value is inconsistent with substantial evidence on

the record and Commerce's precedent. Contrary to Defendant's and Defendant-Intervenor's arguments, Commerce precedent addresses the precise scenario presented in this matter – relying on the USD-denominated price to avoid large fluctuations in the exchange rate, as compared to Turkish Lira. Moreover, the evidentiary record supports relying on the USD-denominated price as reported in Habaş's home market sales database.

In its home market sales database, Habaş reported the gross unit price in U.S. Dollars and Turkish Lira. In the Turkish market, Turkish producers, including Habaş, rely on the USD-denominated price to avoid risk associated with large fluctuations in the exchange rate. Habaş relied on this "transaction currency" when responding to Commerce's questionnaires. The factual record supports that home market sales were made and confirmed with a U.S. Dollar value; invoices were issued in Turkish Lira as required by Turkish law, with the U.S. Dollar exchange rate specified, in the amount agreed upon by the customer based on the customer communications; and customers made their payments in U.S. Dollars.

## II.   ARGUMENT

### A.   Commerce's Use of the TL Value of Habaş's Home Market Sales Is Not Supported By Substantial Evidence and is Not In Accordance With Law

Commerce has explained it will use the USD-denominated home market sale prices, as reported, when and because the USD price controls the ultimate amount paid by its home market customers. Commerce has emphasized two issues for consideration:

> (1) the price for these transactions is fixed in USD at the time of invoicing (*i.e.*, at the date of sale); and (2) this USD price controls the ultimate amount that the purchaser pays for the sale, {Commerce} has used the USD dollar price in {its} analysis.

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*, 84 Fed. Reg. 30694 (Dep't Commerce June 27, 2019) (final AD determ. & final no shipments results; 2016-2017) ("*2016-17 HRS Final Results*"), and accompanying Issues and Decision Memorandum at 10 ("*2016-17 HRS Final Results IDM*").  Defendant has not explained why this standard does not apply in the current case, asserting only that "because it was the TL values that reconciled with Habaş's audited financial statements, Commerce reasonably did not find that the USD values were 'controlling.'"  Def. Resp. Br. at 16.  Instead, Defendant

4

argues that Commerce cannot use the USD-denominated values for Habaş's home market sales because the "USD values {reported by Habaş} did not appear consistent with the actual amounts paid and which were not reconciled to Habaş's audited financial statements." *Id.* at 15. Defendant relies on Commerce's statement that the "sample sales documentation shows that the USD amount paid *does not* match the USD amount on the invoice provided." *Id.* at 17 (emphasis in original). The record shows otherwise.

### 1. Substantial Evidence Supports Relying the USD-Denominated Price Reported for Home Market Sales

Commerce acknowledged that "Habaş's home market sales were negotiated and ordered in USD and paid in USD." *Id.* at 13. Although Habaş had to invoice its home market sales in Turkish Lira pursuant to Turkish law, it "reported the sales values in both TL and USD in its home market sales database." *Id.* The Defendant describes it as "notable" that the sales values reconciled with the audited financial statements are the TL reported values. *Id.* at 13-14. This should not be notable to Commerce. Financial statements and tax return financial information in Turkey are obviously in Turkish Lira, just as U.S.

financial statements are in USD; this fact should not, and has not in past cases, precluded the use of USD values for Habaş's home market sales. *See, e.g. 2016-17 HRS Final Results IDM* at 8 (including an undisputed description from respondent that "Turkish law requires companies to report financial statements in TL and to pay value-added tax in TL" but making no mention otherwise of an analysis of the respondent's financial statements); *see also Certain Hot-Rolled Steel Flat Products From Republic of Turkey,* 84 Fed. Reg. 68878 (Dep't Commerce Dec. 17, 2019) (prelim. AD results & determ. of no shipments; 2017-2018), and accompanying Preliminary Decision Memorandum at 15 ("*2017-18 HRS Preliminary Decision Memo*") (reporting that the USD value was converted to TL "using the exchange rate" based on "the date it issued its home market invoice."); *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*, 85 Fed. Reg. 63098 (Dep't of Commerce Oct. 6, 2020) (final AD results & determ. no shipments; 2017-2018) ("*2017-18 HRS Review*") (making no changes with respect to currency). In the *2016-17 HRS Final Results* case, Commerce relied on the USD-denominated values in the home market while the respondent's financial statements were reported in

6

TL. *2016-17 HRS Final Results IDM* at 8. Habaş is not in a unique

situation – all companies' audited financial statements in Turkey must

be in the national currency, Turkish Lira.

The Defendant claims that Habaş has not demonstrated that the

USD values "*control* the ultimate amount," using the 2017-18 HRS

Review as an example of how a company can show that the USD values

control the ultimate amount.  Def. Resp. Br. at 20 (emphasis in

original).  The facts are not so different in this case as to warrant a

different result.  There, the respondent "reported that it converted the

USD value to the TL-equivalent using the exchange rate from the

Turkish Republic Central Bank on the date it issued its home market

invoice." *2017-18 HRS Preliminary Decision Memo* at 15.  Here, Habaş

has demonstrated that the USD price controlled the ultimate payment

amount because it provided evidence to show that prices were

negotiated in USD, and the USD to TL price conversion was included on

the invoice to the customer.

Commerce's determination that it "was presented with TL values

that were stated on Habaş's invoices" is inconsistent with the

evidentiary record.  *See* Def. Resp. Br. at 15. The Defendant and

**NON-CONFIDENTIAL VERSION**

Defendant-Intervenor claim that the payment amount provided on the customer's confirmation form does not reconcile with the associated invoice.  *See id.* at 16; D-I Resp. Br. at 4.  This is simply not true. Habaş provided an order form, e-mail confirmation for the sale, and the associated invoice.  The customer order form and e-mail confirmation for the sale both identify the "Efektif fiyat" – effective price – [

          ] USD, respectively for [                          ] of the merchandise. Habaş Section A Questionnaire Response at Exh. A-8 (June 29, 2020), CR 8, PR 62, Appx1350-1360 ("Sec. A QR"); *see also* Habaş Case Brief at 4 (Mar. 26, 2021), CR 154, PR 100, Appx2220 ("Habaş Case Br.")  The associated invoice includes the "unit price usd" multiplied by the "fx rate" (foreign exchange rate) to calculate the corresponding amount of Turkish Lira at the time of the invoice.  Sec. A QR at Exh. A-8, CR 8, PR 62, Appx1350-1360.  The USD amount provided as the "unit price" is the same on all three sales documents. *Id.*  This unit price is the only key element for pricing. Demonstrated in the customer's order form and the customer's e-mail confirmation, the sale was negotiated in USD, and it was that USD price used to calculate the Turkish Lira price at the time of invoicing.  *Id.*  The TL price was

8

not the driver; the USD price controls the ultimate amount the customer paid for the sale. *See id.* at 14, Appx1285 ("{P}rices are quoted and agreed in U.S. dollars.").  Contrary to Commerce's description of the record, the invoice specific to the sample home market sale matches the amount negotiated in the e-mail confirmation and customer order, all in USD.  That Habaş must report its financial statements in Turkish Lira per Turkish law is not probative evidence determinative of the transaction price which controlled the amount for the sale.  Accordingly, Commerce's questions relate to Habaş's "sales process," not its accounting practice, which conforms with Turkish law. Sec. A QR at 13-14, CR 8, PR 62, Appx1284-1285.  The record shows that the customer expected a price in the amount of the USD value quoted in the invoice.[1]

Defendant-Intervenor recognizes this fact, acknowledging "the invoice,

---

[1] Although Habaş has reported that it is unable to "report the date of the receipt of payment on a transaction-specific basis because its information does not link payments to invoices," the payment screenshot provided by Habaş clearly demonstrates that the amount is recorded in USD.  Habaş notes that it must report this way (one payment sample) because it works with customers based on an open account, where payments are continuous and do not match to individual invoice amounts.  *See* Habaş Sec. B-C Questionnaire Response at 21 (July 13, 2020), CR 11, PR 67, Appx1628 ("Sec. B-C QR"); Sec. A QR at Exh. A-8, CR 8, PR 62, Appx1350-1360 (providing the "amount" in USD); *id.* at 14, Appx1285 (explaining that "{p}urchase orders may correspond to a single invoice or more.").

9

**NON-CONFIDENTIAL VERSION**

i.e., the document establishing the relevant home market price, stated prices in TL . . . Although the invoice also reflected an exchange rate and a USD value." D-I Resp. Br. at 3. The payment amount provided in the sample invoice provided at Exhibit A-8 was controlled by the USD-value appearing on the invoice, not the TL amount, as it was the same USD amount as that provided in customer communications, and the amount recorded in the supporting evidence for "payment" provided by Habaş is obviously in USD. Sec. A QR at Exh. A-8, CR 8, PR 62, Appx1350-1360.

Commerce did not request supplemental information with respect to the controlling currency for the sample sale [

] provided. Habaş also provided supplemental information, as requested by Commerce, for certain home market sales. *See* Habaş Supp. Sec. A-C QR at 3 and Exh. S2-4.1 (Jan. 7, 2021), CR 137, 138, PR 84, Appx1896, Appx2036-2037 ("Supp. A-C QR"). Defendant-Intervenor's argument in its brief, citing Commerce's *Final AD Results*, which states that Habaş "failed to provide" payment documentation is misleading and belied by the record evidence. *see* D-I Resp. Br. at 4,n.2; *see also Final Results IDM* at 7, 10, PR 112, Appx1067, Appx1070. In

10

**NON-CONFIDENTIAL VERSION**

its supplemental questionnaire, Commerce requested "payment

documentation for {certain} home market invoices."  *See* Supp. A-C QR

at 3 and Exh. S2-4.1, CR 137, 138, PR 84, Appx1896, Appx2036-2037.

Habaş provided such information which related to [

] in the form of SAP

printouts including the sales figures in its supplemental response.  *See*

*id.* Although Habaş was prepared to respond to supplemental questions

from Commerce, Commerce did not request additional information to

substantiate what the record shows for its sample sale – its home

market sales were controlled by the USD-denominated value.

Habaş acknowledges that its financial statements include audited

Turkish Lira values.  However, Defendant and Defendant-Intervenor

have provided no authority to support that this fact alone means the TL

values controlled the ultimate amount the purchaser paid for the sale,

which is the test previously used by Commerce. It is not Habaş's

audited financial statements which show the price controlling the

ultimate amount the purchaser pays for the sale or the price fixed at

the time of invoicing. Here, its communications with the customer and

the invoice demonstrate the controlling price.  Further, the Defendant

11

recognizes that the TL-denominated amount calculated on the invoice (*i.e.*, USD * forex) "reconciled with Habaş's audited financial statements." Def. Resp. Br. at 16. This amount is directly related to and derived from the USD amount on the invoice. Commerce's decision in the *Final AD Results* to focus on the TL values in Habaş's audited financial statements is inconsistent with its prior decisions and treatment of respondents in prior cases.

### 2. Commerce's *Final AD Results* Are Inconsistent With Its Prior Decisions

Commerce's *Final AD Results* are inconsistent with its prior determinations and, as described above, are unreasonable as they are unsupported by the record evidence. Habaş reasonably relied on Commerce's decisions to regularly use the USD-denominated values. With respect to this review, Defendant argues that "the issue is whether Habaş's reported sales can be reconciled to its financial statements, thereby establishing that the reported sales are complete and reliable." *Id.* at 24. This is a departure from Commerce's previous decisions regarding the home market currency and Commerce's analysis in prior cases with similar facts. In previous determinations,

particularly in investigations and orders on merchandise from Turkey, Commerce has consistently relied on U.S. Dollar values for home-market sales, when the transactional elements, including contracts, confirmations, and payments, were made in dollars between the respondent and the respondent's customers in the home market.  This approach aligns with "Commerce's normal policy, as reflected in the questionnaire instructions," that "'the *sale price*, discounts, rebates and all other revenues and expenses' must be reported 'in the currencies in which they were earned or incurred{.}'" *2016-2017 HRS Final Results IDM* at 9 (emphasis in original) (citation omitted).  This approach also accounts for the potential distortion of "the actual home market prices" in instances of "drastic" currency devaluation, an issue endemic to Turkey.  *Certain Cold-Rolled Carbon Steel Flat Products From Turkey*, 67 Fed. Reg. 62126 (Dep't Commerce Oct. 3, 2002) (final LTFV determ.) ("*Cold-Rolled Steel Flat Products from Turkey*"), and accompanying Issues and Decision Memorandum at 4, 5 ("*Cold-Rolled Steel Flat Products from Turkey IDM*"). Commerce's failure to apply the same analysis in this case causes a great distortion of the margin.

13

Defendant and Defendant-Intervenor argue that Commerce's practice as described in prior cases does not apply because "the record does not establish that the USD price *controls* the ultimate amount paid" and "the TL values . . . were the values that Habaş reconciled to its audited financial statements."  Def. Resp. Br. at 18-19, 22 (emphasis in original); *see generally* D-I Resp. Br.  However, as explained above, the record demonstrates that the USD price *does* control the ultimate amount paid and, as explained in Habaş's opening brief and below, Commerce's past cases recognize that financial statements in Turkey must be in TL, without consequence to the determination of which currency to rely upon for home market sales.

In addition to the cases cited in Habaş's opening brief, Commerce also analyzed a nearly identical scenario in the less-than-fair-value investigation of *Cold-Rolled Carbon Steel Flat Products from Turkey*. In that case, the respondent

> negotiated many home market sales in USD, indexed to the USD sales value {and that} it issued an invoice to obtain from the customer the exchange rate differences, . . . resulting from drastic currency fluctuation in the exchange rate from the date of invoice to the date of payment, deriving the amount in Turkish lira (TL) originally agreed upon for the sale.

14

*Cold-Rolled Steel Flat Products from Turkey IDM* at 2. Commerce

agreed with the respondent and used "its USD prices instead of TL

prices." *Id.* at 4.

In that case, Commerce and the respondent specifically reference

the "kur farki" or the "exchange rate differences" as an important factor

in the analysis of whether to use USD.  Indeed, Commerce explained:

> When a sale is priced in USD, {respondent} has assured
> itself that it will receive an amount of TL based upon the
> exchange rate in effect at the time of invoicing. . . .
> Therefore, because: 1) the price for these transactions is
> fixed in USD at the time of invoicing; 2) this price does not
> change, with a few extraordinary exceptions, prior to
> payment; 3) the POI coincides with a time of high inflation
> and the amount invoiced in TL does not equal the USD
> amount of the sale as negotiated; and 4) price differences
> may exist for sales negotiated in USD versus those
> negotiated in TL, we have used in our analysis the USD
> price for those home market sales negotiated in USD."

*Id.* at 5.  The above factors were condensed into the analysis described

in Commerce's final results in the 2016-2017 review of HRS from

Turkey, which explained that where the price for home market

transactions was "fixed in USD at the time of invoicing," and the "USD

price controls the ultimate amount that the purchaser pays for the

sale," Commerce will use the USD-denominated price in its analysis.

15

*2016-17 HRS Final Results* at 10.  Neither case mentions a prong of

Commerce's analysis which requires a review of the respondent's

financial statements to determine which currency to value home market

sales.  Both cases, however, emphasize that the concerns, as described

in the *Cold-Rolled Carbon Steel Flat Products from Turkey* case,

resulting in the use of USD-denominated prices in the Turkish market

still exist.

    In this case, Commerce found that "an inflation rate of at least

25% existed during the comparison period based on the Turkish

producer price index."  Memorandum from L. Wang to The File, re:

Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. (Habas)

Preliminary Margin Calculation Memorandum at 2, (Feb. 18, 2021), CR

144, PR 94, Appx1031.  To combat the volatile exchange rate, USD-

denominated prices for sales in the home market are used.  "Prices

negotiated in USD and prices negotiated in TL may be fixed differently,

and if the prices are fixed differently for those who pay in USD versus

TL, then the USD prices for sales negotiated in USD should be used to

ensure capturing the real value for those sales."  *Cold-Rolled Carbon*

*Steel Flat Products from Turkey IDM* at 5.  The record shows that

Habas negotiates USD prices with its customers and that its customers pay in USD. *See* Sec. A QR at Exh. A-8, CR 8, PR 62, Appx1350-1360 (providing evidence of customer payment, which demonstrates payment was made in USD). Historically, Commerce has considered such evidence as support enough to rely on the USD-denominated prices in Commerce's home market analysis.

## III.   CONCLUSION

For the reasons set forth above and in the Memorandum in Support of Motion for Judgment on the Agency Record, Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. respectfully requests that this Court hold that Commerce's *Final AD Results* were not in accordance with law and were not supported by substantial evidence with respect to Commerce's determination to continue to use the TL-denominated price for Habaş's home market sales. On remand, Commerce should be ordered to revise its determination consistent with the Court's opinion.

Respectfully submitted,

**/s/ Matthew M. Nolan**
Matthew M. Nolan
Jessica R. DiPietro
ARENTFOX SCHIFF LLP
1717 K Street, NW

AFDOCS/26094526.1

Washington, D.C. 20006
202-857-6013

*Counsel to Habaş Sinai ve Tibbi
Gazlar Istihsal Endüstrisi A.Ş.*

Dated: July 18, 2022

18

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the

undersigned certifies that Plaintiff's Reply Brief filed on Juley 18, 2022,

complies with the word limitation requirement. The word count for

Plaintiffs' Reply Brief, as computed by ArentFox Schiff LLP's word

processing system is 3,265.


 **/s/ Matthew M. Nolan**
Matthew M. Nolan

AFDOCS/26094526.1